Chief Justice Robertson
delivered the opinion of the Court.
On the 1st of December, 1817, articles of agreement, between Wi¡lia¡r Lytle, of Cincinnati, and Henry M. Shreve, of Louisville, were signed and delivered, by each, in which Lytle acknowledged, that in consideration of Si 5,000, secured by two notes, one for $10,000, due in one. year, and the other for $5,000, due in two years, from the date of the articles, he had sold, and was bound to convey, by general warranty deed, “a certain lot of ground, in the town of Portland, designated, in the plan of said town, by number 12 in square 92, also, the ground opposite said number 12, north of water street, to the river, running on said street 105 feet, (ogether with the exclusive right and privilege to the ferry, which is now established at and from said, lot, number 12. And from all other points, which are, embraced, agreeably (0 the present plan of Portland, between lot, number 8, in square number 103, and the ravine, which makes into the Ohio, immediately below the town, at Shipping-port at which place, the contemplated canal will empty into the river,with a provisional qualification, excepting such points as might be occupied by the proposed canal.
On the 27th of July, 1819, Shreve conveyed the equity, thus acquired from Lytle, and other interests, io Levi Tyler, Edward Tyler, and Wm. C. Galt, in trust, to indemnify James D. Breckenridge, for certain liabilities, which, as his surety and endorser, he had incurred, and for such as he might incur.
On the 2d of May, 1820, Breckenridge filed a bill, in chancery, against Shreve, and the trustees, Tyler, &c. alleging, that suits had been brought against him fora large amount, on some of his endorsements for Shreve; that Shreve would be unable to relieve him; that the trustees had not executed their trust, by selling any of the trust estate; and praying for a decree, enforcing a sale, and for general relief,
*664 The trustees admitted the allegations. Shreve re* s‘s<e6 the decree, only on the plea, that the estate was liable, until Breckenridge bad sustained some actual loss, by payment of money for him.
On the 8th of May, 1821, the circuit court made a nisi decree, for the payment of two of the notes, mentioned in the bill; and the case was successively continued, without any further proceeding, until the March term, 1822, when, on the 11th of March, Breckenridge filed unamended bill, alleging, that he had paid $2,500, as endorser for Shreve, to the bank of the United States.
On tire 10th of July, 1822, this amendment was taken for confessed.
Without any other intermediate proceeding, except •successive orders of continuance, the case was postponed until the 12th of April, 1826, when an amended bill was filed, making John Rowan, William Lytle, Wm. Schlatter, Wm. L. Bryan, and Timothy Bryan, defendants. It charged, that Breckenridge had, in the mean lime, paid $10,000, as endorser for Shreve, who had become insolvent; that Shreve had paid Lytle the first instalment, ($10,000,) for the lots and ferry privilege; that Lytle’s title, to the lots in Portland, had been purchased by Rowan, at a sale, under a fieri facias against Lytle; that Rowan ■claimed ferry privileges, and had sold to Todd, a part of the ground on the river, to the ferry privilege incident to which, he (Shreve) had the exclusive right, by his contract,with Lytle; that Todd had procured the establishment of a ferry there, which was in op-oration, and, which had very much reduced the value of the property, purchased from Lytle; that Lytle was unable to make a title according to.his contract, and had never offered lo do so; and that Schlatter and Bryans were in possession of the ferry, sold to Shreve, having acquired the possession in some way, from Lytle. A rescisión of the contract with Shreve and Lytle is asked, and a decree is prayed for, against Lytle, for the $10,000 paid by Shreve.
Rowan’s acknowledgment of service, is endorsed on the subpoena, which issued on this amended bill, but there is no proof of its genuineness.
i,-no proofoi ^"°07^5" v¡¡coof process by necessary party to a suit ^ is not made a üe!cnuanc-
The bill was taken for confessed, against Lytle, Schlatter, and the Bryans, on a certificate of publication; and against Rowan, on the of service. •
Shreve answered the ahiended bill, and admitted its allegations, and stated, that he had transferred to J. D. Breckenridge, and Robert Breckenridge, all his right to a rescission of the contract with Lytle, anci, that he was desirous that there should be a rescission.
The court, by its final decree, rescinded the contract between Lytle and Shreve, and directed Lytle to pay J. D. Breckenridge $5,000, (one moiety of the $10,000,) without interest, having, with the assent of J. D. Breckenridge, decreed the other moiety to R. Breckenridge.
The court, also decreed a release, by the trustees, to J. D. Breckenridge, and a vacation of all the pretended title of Schlatter, and the Bryans, to the ferry and grounds sold by Lytle to Shreve.
Shreve had made to Robert Breckenridge, a deed of trust, similar to that, which he had made to J. D. Breckenridge, for his indemnity for the like liabilities.
Robert Breckenridge had filed his bill in chancery, in April, 1820, to enforce the indemnity, for securing which, the deed was executed. His suit, and-, that of J. D. Breckenridge, both in the same court, were prosecuted, “paripassu,” against the same parties,and with the same preparation; and, the only difference, between the cases, is, that Rowan answered the bill of Robert Breckenridge, but did not answer that of J. D. Breckenridge, and the decree in favor of Robert does not direct any release to him, by the trustees of the title, which they held.
Rowan,Ly¡le, Schlatter, and the Bryans have prosecuted two several writs of error, to reverse these decrees;and the two cases, having been consolidated m the argument, will be decided together.
Before we proceed to the main question, it will be proper to notice some preliminary objections to the dscrees. These objections arc;
1st. That, in the case of J. D. Ereckcnri Jge. Rowan was a necessary pavtv. ant! was r.r t made a defendant, *666 by service of process. This objection can have ne effect. Rowan was nota,necessary party. No decree was sought against him, or which could affect him in the remotest or slightest degree. And for trying the case between Breckenridge, and, Shreve, and Lytle, it cannot be perceived how, or why it should be material whether Rowan is a .party or not. Therefore, although,if he had been a necessary party, the acknowledgment, without proof of service, would not have ■made him a defendant. There was no error in rendering a decree, without making him a party. He cannot be affected by the decree against Lytle.
Bill by assig-nee of equity against assignor and ob-ligor, for res-cisión of contract^ prayer to compel obligor to refund advance if assignor assent to the decree of resci-sión, and tho payment to assignee, obli-gor -cannot complain. Decree estops assignor from setting up claim vs. obli-gor.
Court may permit u mended bill to be filed after decree nisi. He who was. no party to original bill baton? ly made dept by amendment, cannot object to proceedings an-teriorto being made def’t.
*666 2d. That as, between Breckenridges and Lytle, there is no proof of their right to the benefit of Shreve’s equity, in the contract with Lytle, nor of the payment by them of the money, for which they were sureties.
This is equally fallacious. Shreve, in his answers, admitted all the allegations of the bills, and assented to the decrees. He cannot therefore complain. Nor could he require any proof. It is not material to Lytle, whether the decrees maybe just or unjust to Shreve. lie cannot be responsible to Shreve, after the decrees in favor of the Breckenridges. And the court had a right, so far as Shreve and Lytle may be concerned, to render these decrees, as Shreve was a defendant, and assented to them. See Breckenridge vs. Churchill and Bullitt, III. Liitell’s reports, 3; and Breckenridge vs. Churchill, decided at the last term.
If, therefore, as between the Breckenridges and Shreve, the decree be. valid and proper, Lytle, who is directed by them to pay to the Breckenridges, only what Shreve claimed of him, has no right to object, that the evidence was insufficient to shew, that Shreve was liable to them, and, that they were entitled to the benefit of his equity. Shreve, being a party, will be estopped from asserting any claim against Lytle.
3d. That the court erred, in permitting amended bills to be filed, after the first nisi decrees.
So far as these decrees were final, itAvill be admitted, that the matters disposed of by them, ought not to have been opened. But, they were only for small parts of tJie liabilities, and consequently, if they were *667 final, as far as they extended, the complainants were not out of court, as to the remainders undisposed of, and had a right to keep their cases open for preparation, for full and final decrees, as to their whole liabilities.
When the rights of'persons are separate, neither need be parly to a suit of the other. Facts charged in a bill regularly taken for confessed are admitted.
Besides, Lytle cannot object to this supposed irregularity, because he was no party to the original bills, and was not made a party, until after the first amendments.
4tb. That R. Breckenridge was a necessary party in the suit by J. 1). Breckenridge. We can see no foundation for this objection. The rights of Robert and James were separate and distinct, their claims were unconnected, and independent of each other.
The principal question, involved in both cases, is, whether Lytle was liable to Shreve, fora rescisión of their contract?
It is admitted, that the ground, purchased by Rowan, is a part of that, the incidental ferry privileges of which, are described in the articles, between Shreve and Lytle; and it is also admitted, that Rowan holds the title unrestricted, by Lytle’s guaranty to Shreve, and, that he had sold a part of the ground to Todd, in whose favor a ferry had been established, which was in full and successful operation. These facts are admitted by Lytle, because they are charged in the bills, and they were taken for confessed, against him regularly.
Nor can it be even plausibly urged, that Lytle did not guaranty to Shreve, a monopoly of the ferry privilege, within the limits described in the articles.
The writing Í8 susceptible of no other rational or ponsistent interpretation.
But it is insisted, that this stipulation in the contract, is contrary to public right; that Lytle had no power to carry it into execution ;.and that, therefore, it is impracticable and void; and that consequently, Shreve acquired no right by it, and cannot complain of its non-observance by Lytle.
The principal efforts of the counseji for the plaintiffs have been directed to this position. It is indefensible.
Individual caminí: restrict- either the legislature or the county court, by his contract, from, granting ferries in towns on the Ohio river, in such numbers and as near, as public convenience may require, hut he may make himself responsible for damages should' any be established.
A ferry over the Ohio river is a franchise which is incident to the freehold, no grant of such ferry can be made to. any but the owner of the land.
Stipulation in favor of ven-dee or vendor, that he shall enjoy exclusive ferry right,.is legal and obligatory-
ft will be granted, that Lytle has no right to prevent Rowan, or any other purchaser of any of the land-on the- Ohio, from the privilege of having a ferry, if the sovereign authority or its proper agents shall deem it expedient to grant it. Nor will it be denied, that it was not in the power of Lytle, to limit or restrict the right of the legislature, or of the county court o.f Jefferson to establish ferries.
But, it will not be admitted as a necessary consequence from these concessions, lh.at Lytle could not make himself responsible by contract, for any damages, whicRShrcve may sustain, by the establishment of a ferry, within the prescribed limits.
Public convenience is the only limitation of the power to establish ferries in the towns on the Ohio river. As many, and as near each other as the public good1 may require, may be established in a town.
Bu t no. ferry can be granted, on the Ohio, to any except the owner of the land on the river at the point where the ferry shall be established.
Lytle owned the land, on the river, within the limits described in the articles. He alone had a right to ask for a ferry or ferries, from any points on the river within these limits. The right to a ferry on the Ohio, is a franchise incident toa freehold in the land. It passes with the title to the land. See the trustees of Maysville vs. Boon et al.
The value of the land and ferry privilege sold to Shreve, would be diminished by the establishment of another ferry for the benefit' of any other person. To enhance the vendible price of the ground sold to Shreve, and induce him to purchase it, Lytle, owning the residuum, within a certain boundary, and therefore, being the only person who could be entitled to a férry within this boundary, agreed that there should be no other ferry within that limit, or that, if there should ever be, its profits and privileges should belong to, arid come to the benefit of Shreve. This is the proper construction of the contract.
Is such a stipulation immoral or illegal? Is it interdicted by public policy ? is its fulfilment impracticable, or can its enforcement be detrimental to the public interest, orto any individual right? .
ga!q of ferrv rightcannot E e pomir^but operateaupon ?’* individual indemnifies the purchaser r;sht which vendor might or con
w. s-^ 3 H o - a *5 ; ' 2Í, ►*.S ; o' £ 9 ^3 JS ¿2 3. tt sr sr Q O “ o o*“ p 2 * o °
If Lytle had; retained the title to the land, he alone would have been entitled to the ferry privileges incident to it. And if he had, contrary to his contract, procured a ferry to be established in his own right, and for his own benefit, Shreve would have had cither the equitable right to the profits, or the legal right to adequate damages for the loss which would result to him by the competition'.
If Lytle had thought fit to sell the land, he might have reserved to Shreve the benefit of an exclusive engagementof the ferry privilege, which would have passed with the land to the purchaser, without any reservation.
Lytle could not sell to Shreve the right of the commonwealth to establish ferries. Rut he could sell all his own right to the benefits of any such ferries, if ever established; and be could bind himself to reserve his own right (while he held the title) in any sale which might be made of the land to any other person. Such contracts do not derogate from public righfrtor public power. They are not designed to em-harrass, or curtail the sovereign power, and cannot possibly have the effect of frustrating public policy, or of obstructing the general convenience.
Sucha contract as that made with Shreve, is intended to secure the full and undiminished value of property, or to indemnify the purchaser for any loss which he may be subjected to, in consequence of a reduction in value, by the occurrence of any event which may affect it, and which the covenantor may avert or control.
Lytle not only guarntied to Shreve the exclusive enjoyment of the ferry privilege, bul he virtually transferred to him, his (Lytle’s) right, as the owner of the land, to the benefit of that entire privilege, as far as he had a potential right to it. This, surely he had a right to do. He had a right to sell Shreve all the ground in Portland for $15,000. The ferry privilege being incidental to the right, would have passed with it. It is an integral part of the right to the land. Ho could, therefore, sell the benefit of this incidental advantage, although, as he did not sell the land, he had no power to sell the actual right itself, to be the sranlee of the ferrv.
If vendor have by his act diminished value of purchase to vendee, and disabled himself from conveying, ven-dee, will not be required to seek redress at law, nor to accept of title; but on his application, the contract will be rescinded, and advance or deposit refunded, tho’ consideration not all paid, and no title stipulated to be made until' that event.
h is not probable that Shreve would have given the Prlco which llc agreed to give for the ground he bought from Lytle, unless he had been secured in the exclusive enjoyment of the profits of all the ferry privileges which were incidental to the ground in Portland.
Lytle offered him the security. He had a right to do so. He is, therefore, bound to preserve the right which he has assured to Shreve.
For a breach of this obligation, Shreve might recover damages. But he is not bound to resort to his legal remedy. The title has not been made to him, Lytle never can make it in fulfilment of his contract. He has not kept his faith. Another ferry has been established in virtue of his title; others may be yet established. The value of Shreve’s ferry has been diminished by the delinquency of Lytle. The bill charges that its value has been reduced by the establishment of Todd’s ferry. Todd’s ferry is legally established; Shreve has no interest in it, nor any right to its profits. It would not be just or consistent'with equity. Therefore, if Lytle hadoffered to make a title, to compel Shreve to accept it, as it is impossible that he can be sccurred by a deed from Lytle in the enjoyment of what he contracted for, it would be as unreasonable to withhold a rescission and refuse to reinstate Shreve, as it would be, ifLyllc had, by fraud or any other positive act, put it out of his power to make a title.
It is not because Lytle has been guilty of any delay in tendering a title, or has failed to make it as, soon as he engaged to do it, that the contract ought to be rescinded. He was not bound to make the title until the payment of the whole consideration. But he has rendered it impossible, that he can convey what he promised to secure to Shreve. A monopoly of the ferry privilege was a principal consideration with Shreve. As therefore, the contract remains ex-ecutory, and Lytle has neither made, nor offered to make to Shreve any indemnity, the latter is entitled to a rescission of the contract. Lytle is unable to do what he covenanted to perform.
It results from the foregoing view of the case, that there can be no valid objection to the decree, re *671 scinding the contract between Shreve and Lytle, and appropriating the available fruits of the rescission, to the claims of the Brenckenridges; nor can there any good objection to the distribution of the fund by the decree, according to the agreement of R. and J. D. Breckenridge between themselves, on the record.
Error to ren-^permíam uguinatanab-sentdejend-should have been in «m.
Not necessa-r^°r set out spe-dally nature of claim of defendant, which he es SI enc "
But the circuit court erred in rendering a decree uin personam” against Lytle. The land gave to the court jurisdiction. The court had a right to decree a rescission,although Lytle was a non-resident; and it might also have decreed a sale of the property', for the reimbursement of the money which Shreve had paid Lytle. Shreve had an equitable lien for the consideration which he had paid. If the court had barely rescinded the contract and subjected the property by enforcing the equitable lien, for securing the restitution of the price which had been paid, Lytle would have had no just cause of complaint. Without any lien, any property belonging to Lytle, within the jurisdiction of the court, might (on a proper prayer for that purpose) have been subjected to the payment of Shreve’s demand.
But the court had no authority to go beyond a decree “in rem.” Lytle was not a citizeu of Kentucky. And, therefore, according to the decision of this court, in the case of Williams vs. Preston, the circuit court had no right to render a decree “in personam” against him. So far as Lytle is concerned, this is the only available objection to the decree.
If, however, he had no title whatever to the property, when the amended bill was filed against him, there could be no decree against him of any kind, or to any extent.
The Bryans have no right to object to the decree.
The bill was regularly and properly taken for confessed against them,. The character of their claim to the property is not stated. It was not necessary that lt should have been particularly described.
The general allegation that they had obtained the possession under some claim from Lytle, was sufficient to entitle Shreve, or those claiming his right to demand a disclosure of their title, and a decree for si *672 lencing, or releasing it, unless it should be shewn to be availing against Shreve’s equity.
S’ rror to render decree vs. party, who has neither actual, nor constructive sfervice ofsub-ooena.
Party against whom decree has been er roneously rendered, entitled to his eosts.
Haggin and Danny, for Rowan, &c. Mills and Combs ¡ for Schlatter and Bryans; Crittenden, for defendants.
But Schlatter was not made a defendant by service either actual or constructive, and therefore, as to him the decree is erroneous. By becoming a party to the writ of error, he has entered his appearance, and therefore, there is no necessity for a publication against him. As to him, the term at which this opinion shall be entered, will be the appearance term, and therefore, the amended bill may be taken for confessed against him at the succeeding term, if, in the meantime, be shall not have answered.
As the Bryans might open the decree within seven years, and seem to be joint claimants with Schlatter, they will not be concluded by this opinion, nor will Lytle be concluded, except, as to the construction of his contract with Shreve.
For the errors which have been noticed, the decree of the circuit courtis reversed, and the cause remanded for further proceedings, and for such decree at the final hearing, as shall be seen to be proper, according to the principles of this opinion.
Schlatter is entitled to his costs. The other parties must pay their own costs respectively.